IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02685-KLM

ANDIS DAVIS BERZINS,

　　Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,

　　Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

　　This matter is before the Court[1] on the **Social Security Administrative Record** [#12],[2] filed January 12, 2018, in support of Plaintiff's Complaint [#2] seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. On February 21, 2018, Plaintiff filed an Opening Brief [#18] (the "Brief"). Defendant filed a Response [#19] in opposition, and Plaintiff filed a Reply [#22]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court has reviewed the entire case file and the applicable law and is

---

　　[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. See [#16, #23].

　　[2] "[#12]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

sufficiently advised in the premises. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

## I. Background

Plaintiff alleges that he became disabled on May 1, 2013. Tr. 18.[3] On July 17, 2014, Plaintiff filed applications for disability and disability insurance benefits pursuant to Title II. Tr. 18. On May 29, 2015, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 26.

The ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2016, and that Plaintiff had not engaged in substantial gainful activity ("SGA") from his alleged onset date of May 1, 2013. Tr. 20. The ALJ found that Plaintiff suffers from three severe impairments: (1) depressive disorder, (2) anxiety disorder, and (3) chronic hip pain. Tr. 20. However, the ALJ also found that these impairments, individually or in combination, do not meet or medically equal "the severity of one of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526)." Tr. 20. The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform work at a light exertional level with the following limitations:

> [H]e cannot climb ladders or stairs; he can occasionally stoop, kneel, crouch and crawl; and he cannot perform work that involves contact with the general public or more than occasional contact with co-workers and supervisors.

Tr. 21. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 12 through 12-15 by the sequential transcript numbers instead of the separate docket numbers.

ALJ found that Plaintiff was able to perform his past relevant work as a software analyst. Tr. 71-72. He therefore found Plaintiff not disabled at step four of the sequential evaluation. Tr. 25-26. The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. § 404.981.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or

combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo.*" *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

**A.     Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a

determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Id.* 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

## B. Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It

requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff asserts that the ALJ erred in two primary ways. First, Plaintiff argues that the ALJ improperly found that Plaintiff's anxiety did not meet Listing 12.06. *Brief* [#18] at 3. Second, Plaintiff argues that the RFC formulated by the ALJ is not supported by substantial evidence of the record. *Id.*

**A.      Step Three: Listing 12.06**

"At the third step, we [will] consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix I of this subpart and meets the duration requirement, we will find that you are disabled." *Gallegos v. Colvin*, 646 F. App'x 613, 615 (quoting 20 C.F.R. § 404.1520(a)(4)(iii)). In other words, "[s]tep three asks whether any medically severe impairment, alone or in combination with other impairments, is equivalent to any of a number of listed impairments so severe as to preclude substantial gainful employment." *Gallegos*, 646 F. App'x at 615-616 (quoting

*Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (internal quotation marks omitted)).

"To meet Listing 12.06 for anxiety related disorders, the claimant must establish that he meets the criteria of subsections A and B, or A and C." *Gallegos*, 646 F. App'x at 616 (citing 20 C.F.R. 404, Subpt. P, App. I, § 12.06). Plaintiff asserts that he met the criteria of subsections A and B, *see Brief* [#18] at 12, and thus the Court need not examine subsection C here. *See* 20 C.F.R. 404, Subpt. P, App. I, § 12.06. Specifically, Plaintiff asserts that the evidence supports the following findings sufficient to meet the requirements of Listing 12.06:

A. Medically documented findings of at least one of the following:
    1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
        a. Motor tension; or . . .
        c. Apprehensive expectation; or
        d. Vigilance and scanning; or
    2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
    3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week; . . .
AND
B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; . . .

*Brief* [#18] at 11-13. He bases all of these findings solely on the opinion of Roger Cambor, M.D. ("Dr. Cambor"), Plaintiff's treating psychiatrist. *Id.* at 10-12.

The ALJ did not discuss the criteria of subsection A of Listing 12.06, and therefore, for purposes of this analysis only, the Court assumes, without deciding, that Plaintiff met the required criteria of subsection A. *See* Tr. 21. Thus, the Court's review focuses solely

on subsection B. In the Brief, in support of the argument that subsection B is met, Plaintiff cites to a single page of an Anxiety-Related Disorders Professional Source Data Sheet completed by Dr. Cambor on November 20, 2016. *See* [#18] at 12 (citing Tr. 327 (i.e., "Exhibit 5F")). That page consists of a series of questions and boxes to check. Tr. 327. Question VI. asks: "Does the patient have any of the following current marked limitations?" Tr. 327. Dr. Cambor checked the first three boxes: A. [m]arked restriction of activities of daily living; B. [m]arked difficulties in maintaining social functioning; and C. [m]arked difficulties in maintaining concentration, persistence, or pace. Tr. 327.

> With respect to Dr. Cambor and Listing 12.06, the ALJ's opinion stated:
>
> With regard to the claimant's mental impairments, actually it is noted that the State agency medical consultant did not find the claimant to have any severe mental impairments. Based on all the evidence, and giving the claimant the benefit of the doubt however, the undersigned has found the claimant to have severe mental impairment[ ] of . . . anxiety disorder. . . . In applying the psychiatric review technique "B criteria" to the mental impairments, the following degrees of limitation are found: restriction of activities of daily living—mild; difficulties in maintaining social functioning—moderate; deficiencies of concentration, persistence, or pace—mild; episodes of decompensation each of extended duration—none. The factors documenting the mental impairments and the degrees of limitation are reflected in the discussion of the medical evidence below.
>
> The undersigned notes that although Dr. Cambor . . . did indicate the presence of a listing-level mental impairment, based [on] "marked" functional deficits in activities of daily living, social functioning and maintaining concentration, persistence and pace, this assessment is not supported by the evidence of record and seems inconsistent with the treatment records of this source, which fails to document a frequency in treatment, objective findings or even subjectively described symptoms and limitations suggestive of any marked functional limitations.

Tr. 21. The ALJ later expanded on his analysis of Dr. Cambor's opinion, stating:

> Regarding treatment of the claimant's mental complaints, records from Dr. Cambor dated from September 2013 into August 2016 support the ongoing presence of an anxiety-related disorder, but do not contain consistent

complaints or findings supportive of the rather severe and arguably disabling functional limitations that this source opined in a medical opinion dated November 20, 2015. Generally Dr. Cambor found the claimant to have moderate and marked restrictions with regard to work-related mental activities, due primarily to the claimant's anxiety, but also in part due to depression and chronic pain complaints. Treatment records from this source, however, reflect rather significant mental (and physical) functioning and show gaps in treatment that do not seem supportive of a disabling level of mental impairment. For these reasons, the undersigned rejects and gives little weight to Dr. Cambor's opinion at Exhibit 5F.

Early evidence from Dr. Cambor note the claimant to be filing for divorce but making new friends in October 2013. He denied having any recent panic attacks and had good concentration and attention at that time. The claimant also reported he was a seller and transporter of firearms. Also of note, he conceded having increased anxiety in the context of his divorce proceedings and further admitted having a recent relapse in alcohol use, around the time he alleges his disability began. The following month, in November 2013, the claimant reported he was doing better and was actively looking for work. He again denied recent panic attacks and further reported that he was trying to market a business. Again, the claimant's mental symptoms were noted to be in the context of his divorce. Later, in April 2014, the claimant was described as generally coping well, anxious at times but not especially depressed. He had a normal mental status exam. The claimant reported that he was going to file for bankruptcy in May 2014 and indicated that he had been rather active. He was attending AA, meeting friends and walking his dogs. According to Dr. Cambor, the best remedy for the claimant would be to see if he could work as a cashier or programmer. This seems very inconsistent with his later suggestion that the claimant has disabling mental limitations. Also inconsistent with the allegation of disability from a mental health standpoint is the absence in mental health treatment from December 2015 to April 2016, and the claimant subsequently reporting that he was applying for disability benefits on the basis of pain. Later, in June 2016, the claimant was described by Dr. Cambor as being in a fairly good mood with adequate concentration. The claimant reported that he was working on a software project which he was hoping to launch later this year. These records simply do not support the level of impairment reported by Dr. Cambor at Exhibit 5F, and for these reasons little weight is given to that evidence.

Tr. 24-25 (internal citations omitted).

Plaintiff argues that "the ALJ's failure to afford proper weight to Dr. Cambor's opinion led him to deny [Plaintiff's] benefits improperly at Step 3." *Brief* [#18] at 13. "Generally, a

treating [source's] opinion receives more weight than other [medical source] opinions since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence." *Brownrigg v. Berryhill*, 688 F. App'x 542, 548 (10th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks and brackets omitted). The evaluation of a treating source's opinion requires "a sequential two-step inquiry, each step of which is analytically distinct." *Brownrigg*, 688 F. App'x at 548 (quoting *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011)). "First, the ALJ must consider whether the opinion is entitled to controlling weight." *Brownrigg*, 688 F. App'x at 548. This analysis requires findings that the physician's opinion is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and consistent with other substantial evidence in the record." *Id.* (quoting *Krauser*, 638 F.3d at 1330) (internal quotation marks and brackets omitted). "Second, if the opinion is not entitled to controlling weight, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in 20 C.F.R. §§ 404.1527 and 416.927 . . . for the weight assigned." *Id.* (internal quotation marks, brackets, and footnote omitted). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Although the six factors

listed above are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*, 509 F.3d at 1258 (quoting *Watkins*, 350 F.3d at 1300).

Plaintiff points to a variety of evidence throughout the record which could potentially support a finding that some or all of Dr. Cambor's restrictions were supported by substantial evidence. *See Reply* [#22] at 2 (citing Tr. 476, 477, 494, 511, 512, 513, 532). However, when there is conflicting evidence in the record, the reviewing court's role is solely to consider whether the ALJ's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). As long as the ALJ has reached a reasonable interpretation of the evidence, then that assessment controls, regardless of whether there are other reasonable interpretations of the evidence as well. *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994); *Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (internal alterations omitted)).

Here, as recited above, the ALJ provided a number of valid reasons for giving Dr. Cambor's opinion "little weight." Tr. 21, 24-25. The consistency of a medical source's opinion with the record as a whole is a legitimate factor to be considered in evaluating the opinion. *See Quintero v. Colvin*, 567 F. App'x 616, 620 (10th Cir. 2014) (citing 20 C.F.R.

§ 416.927(c)(4)). The ALJ did not doubt that Plaintiff experienced "the ongoing presence of an anxiety-related disorder" from September 2013 to August 2016. Tr. 24. However, that is not the legal issue here; rather, the issue is whether the evidence supports a finding that Plaintiff's anxiety-related disorder was so severe as to be disabling. *See* 20 C.F.R. § 404.1545(a)). The ALJ thoroughly outlined the history of Dr. Cambor's treatment of Plaintiff and noted the lack of documentation of treatment frequency, objective findings, and subjectively described symptoms and limitations which would be required to demonstrate a Listing-level impairment. Tr. 21, 24-25.

Based on the ALJ's analysis and the underlying record, the Court cannot find that the ALJ's decision with respect to giving Dr. Cambor's opinion little weight was unsupported by substantial evidence. Thus, on the basis of this argument, the Court cannot finding that the ALJ erred in finding that Plaintiff did not meet the requirements of Listing 12.06.

**B.     Step Four: RFC**

Next, Plaintiff argues that the RFC formulated by the ALJ is not supported by substantial evidence of the record. *Brief* [#18] at 3. At the outset, the Court notes that on March 28, 2016, Social Security Ruling 96–7p was superseded by Social Security Ruling 16–3p. The newer Ruling eliminates the term "credibility" from the Administration's sub-regulatory policy. The ALJ's decision in this case was issued on September 21, 2016, *see* Tr. 26, and therefore the Court examines the issue of the ALJ's evaluation of Plaintiff's evidence pursuant to Social Security Ruling 16–3p. The Court notes, however, that the regulations governing the evaluation of a claimant's evidence have not materially changed, and despite elimination of the term "credibility," the analysis appears to be materially the same, i.e., determining whether the claimant's testimony, daily activities, medication use,

etc., are consistent with the objective medical record, the opinions of medical professionals, etc., such that a finding of disability based on the intensity, persistence, and limiting effects of the claimant's symptoms is warranted under the Act. *See, e.g.*, 20 C.F.R. § 416.929.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotations omitted); *see also White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001). "Nevertheless an ALJ's adverse credibility finding 'should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Mendez v. Colvin*, 588 F. App'x 776, 779 (10th Cir. 2014) (quoting *Wilson*, 602 F.3d at 1144). The ALJ is not required to set forth a formalistic factor-by-factor recitation of the evidence, but must only set forth the specific evidence he relied on in evaluating Plaintiff's testimony. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Specific evidence that the ALJ can evaluate and rely upon includes:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988); *see also id.* at 1132 n.7 (noting further that these factors "are not exhaustive . . . but merely illustrative"). Therefore, as long as the ALJ links his assessment of the consistency of Plaintiff's testimony to specific evidence in the record, his determination is entitled to substantial deference. *White*, 287 F.3d at 910; *see also Qualls*, 206 F.3d at 1372.

Regarding Plaintiff's testimony, the ALJ stated in part:

> The claimant is currently 58 years old with a high school and college education and a master's degree in geology and financial mathematics. He has past work experience as a software analyst. He alleges that he can no longer perform his past work as it required too much travel which was causing increased anxiety. He got to the point that he could no longer travel for work and his anxiety became such that he does not think he could perform any work. The claimant said that he has good days when he might be able to drive 25 minutes into town and go shopping. But on bad days he might not leave his room and definitely not the house. The claimant lives with a friend and does do his own cooking, shopping and cleaning but said he might need to lie down for an hour after he cleans. He has chronic hip pain and said this limits his ability to sit to about 25 minutes. He can stand for 10 minutes and walk only about 100 feet. The claimant concedes that around the time he stopped working he was going through a difficult divorce and had a relapse in alcohol use. He no longer drinks and attends AA meetings, where he has made some new friends.
>
> The claimant has also submitted written statements describing his alleged disabling symptoms and functional limitations. This evidence generally corroborates the claimant's sworn testimony. . . .
>
> The findings herein also comport with the claimant's own admitted activities and abilities. As noted, despite his complaints of significant social anxiety, the claimant lives with a friend and is making new friends at AA meetings. As discussed in further detail below, there are also references in the record to the claimant doing some quasi-work activity, reportedly trading repairs for rent, and working on a deck at a new home. Additionally, there is mention of efforts to market a new business, job hunting, selling firearms and working on a software project that the claimant hopes to start. The claimant further testified that he still has and takes care of multiple dogs. He does his own house chores, and though he alleges having difficulty doing anything longer than about 20 minutes due to hip pain, there is little to no objective support for these complaints in the medical record. In sum, the claimant's allegations of disabling physical and mental symptoms and limitations seem inconsistent even with his own admitted activities and abilities, and also fail to comport with available medical treatment records.

Tr. 22-23 (internal citations omitted).

Plaintiff primarily argues that the ALJ erred in assessing Plaintiff's pain issues and mental health issues, which the Court addresses in turn below. *See Brief* [##18] at 16-18.

**1.     Pain**

In part, Plaintiff argues that the ALJ failed to provide sufficient reasoning for rejecting Plaintiff's testimony about his pain. *Brief* [#18] at 17-18. Regarding the evaluation of whether pain is disabling, an ALJ must consider:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Brownrigg*, 688 F. App'x 542, 545 (10th Cir. 2017) (quoting *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). In conducting this analysis, the ALJ considers a variety of factors, including "a claimant's persistent attempts to find [pain relief] and [his] willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor . . . and the claimant's daily activities, and the dosage, effectiveness, and side effects of medication." *Brownrigg*, 688 F. App'x at 545 (quoting *Keyes–Zachary*, 695 F.3d at 1167). The ALJ's analysis does not need to formally address each factor, "but the substance must be there." *Brownrigg*, 688 F. App'x at 546 (citing *Keyes–Zachary*, 695 F.3d at 1167).

Regarding the RFC, the ALJ held that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 22. With respect to Plaintiff's assertions of disabling hip pain, the ALJ discussed Plaintiff's "own admitted activities and abilities" and found that they were inconsistent with a finding of disabling limitation and "fail[ed] to

comport with available medical treatment records." Tr. 23.  The ALJ then stated:

> Regarding the claimant's physical limitations, there is no opinion in the record from a State agency medical consultant.  However, Dr. Moser, who conducted a consultative physical examination of the claimant in January 2015, failed to identify any definitive diagnoses for the claimant's bilateral hip complaints, and did not find the claimant to have any physical restrictions on work activity.  The claimant did have evidence of osteopenia in an x-ray of the right hip, but no acute abnormalities or indication for joint degeneration.  The claimant was noted to sit and move around comfortably in the examination room.  He had a normal gait and full joint range of motion.  Motor strength was 5/5 throughout and the claimant had intact sensation and reflexes.  This evidence indeed fails to demonstrate the presence of any serious hip or joint problems, and is not indicative of any greater restrictions on physical work functioning than found in this decision. . . .
>
> Treatment records over time also intermittently describe the claimant as having bilateral hip pain, but with the claimant reporting in July 2014 that he "rarely" takes even over-the-counter analgesics for this complaint.  An ultrasound later conducted in December 2014 showed no significant abnormalities in the hips, and the claimant was assessed nonspecifically with "hip pain."  Though later evidence does show a diagnosis of osteoarthritis of the hips, this seems to be based more on the claimant's subjective complaints than objective findings, and in any case this diagnosis alone does not support disabling work restrictions.

Tr. 23-24 (internal citations omitted).

The Court finds that the ALJ adequately evaluated Plaintiff's pain.  He discussed at length the objective medical evidence, as recited above.  *See* Tr. 23-24.  The ALJ did not doubt that Plaintiff experienced some pain from his hip osteoarthritis issues.  Despite Plaintiff's comment that the ALJ rejected Plaintiff's testimony, *see Brief* [#18] at 17-18, there is no indication that the ALJ fully rejected Plaintiff's testimony.  Rather, the ALJ merely stated that Plaintiff's testimony was not fully consistent with *disabling* pain.  Tr. 23 (discussing Plaintiff's daily activities and abilities).  While not demonstrating beyond any doubt that Plaintiff is not disabled, Plaintiff's self-reports do tend to suggest that Plaintiff is capable of a higher level of activity than a person who is disabled under the Act.  *See, e.g.*,

*Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). The ALJ accounted for the level of pain supported by the record by limiting Plaintiff's RFC to light work, barring Plaintiff from climbing ladders or stairs, and only allowing him to occasionally stoop, kneel, crouch, and crawl. Tr. 21.

In short, Plaintiff argues that the ALJ erred by mischaracterizing and/or ignoring evidence favoring Plaintiff. *Brief* [#18] at 17-18 (citing Tr. 48, 49, 308, 333, 428, 449, 523, 535, 569). However, the Court must "decline [Plaintiff's] invitation to reweigh the evidence to substitute our judgment for that of the Commissioner" when the ALJ has utilized the correct legal standards in her finding. *Harper*, 528 F. App'x at 892 (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). The ALJ is not required to discuss every piece of evidence he considers. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). He is only required to explain and support with substantial evidence which parts of a claimant's testimony he did not fully believe and why. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002). Here, based on the Court's review of the ALJ's determinations, the Court finds that the ALJ did precisely what was required by identifying a number of inconsistencies in the record. *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010). Although Plaintiff appears to want the ALJ to perform "a formalistic factor-by-factor recitation of the evidence," this is not what is required. *See Wahpekeche v. Colvin*, 640 F. App'x 781, 783 (10th Cir. 2016).

### 2. Mental Health

Plaintiff also argues that the ALJ erred in his RFC analysis regarding Plaintiff's mental health issues. *Brief* [#18] at 16-17. Regarding the consistency of Plaintiff's mental health testimony with the objective medical evidence, the ALJ stated:

> Medical treatment records since the alleged disability onset date do show complaints of anxiety, and indicate increased symptoms during the time of the claimant's divorce, from late 2013 into summer 2014. This seems consistent with the claimant's own testimony and with the observations of one of his former psychotherapists . . . . Also around this time, the claimant was noted to be abusing alcohol, with a history of alcohol dependence indicated. This also is not inconsistent with the claimant's own testimony and indicates the presence of some situational and temporary factors concerning the claimant's mental symptoms around the time he alleges he became unable to work. Indeed, later routine treatment dated into 2016 appear to show less frequent and severe complaints of anxiety to attending medical providers.

Tr. 23-24.

Plaintiff argues that his "nonmedical testimony is consistent with medical evidence of severe depression and anxiety" and "[t]herefore, the ALJ should have found [Plaintiff's] statements regarding his psychological symptoms to be consistent with the medical evidence of record." *Brief* [#18] at 17. However, on this particular point, Plaintiff appears to be manufacturing a nonexistent argument. In reality, the ALJ found that, "[b]ased on all the evidence, including more recently submitted treatment records and testimony received at the hearing, the Administrative Law Judge believes that the evidence supports the existence of severe depressive and anxiety-related disorders." Tr. 23. The real issue here is that the ALJ found that there was "no medical support for finding any greater restrictions on work-related mental functioning than found in this decision." Tr. 23. In other words, the real issue here is whether these disorders *disabled* Plaintiff from holding any job.

Although Plaintiff points to evidence supporting the fact that he has severe depressive and anxiety-related disorders, the Court cannot find on this record, without reweighing the evidence, that the ALJ erred in his determination. *See Harper*, 528 F. App'x at 890 (stating the Court "may neither reweigh the evidence nor substitute [its] judgment

for that of the agency"). The ALJ repeatedly referenced and cited to evidence of these impairments as he canvassed the record and summarized the effects of Plaintiff's asserted impairments in order to determine Plaintiff's RFC. It is clear from a review of the ALJ's decision that he thoroughly explained why he chose not to put greater restrictions on Plaintiff's ability to work based on the alleged impairments of depression and anxiety. *See Clifton*, 79 F.3d at 1009. The ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Here, the ALJ's analysis of the record demonstrates that substantial evidence supports his conclusion. *See id.* at 1140. The evidence analyzed and cited by the ALJ is not overwhelmed by other evidence in the record, including the evidence cited by Plaintiff. *See, e.g.*, Brief [#18] at 16-17; *Grogan*, 399 F.3d at 1261-62.

Accordingly, the Court finds no reversible error in connection with the ALJ's determination regarding Plaintiff's RFC.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

BY THE COURT:

Dated: March 21, 2019

Kristen L. Mix
United States Magistrate Judge